**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**


**JERRY L. HESS,**

        **Petitioner,**

   **v.**                         **CIVIL ACTION NO. 3:05cv136**
                                           **(Judge Bailey)**

**WARDEN THOMAS McBRIDE,**

        **Respondent.**


## REPORT AND RECOMMENDATION
## 28 U.S.C. § 2254


On December 23, 2005, the *pro se* petitioner, Jerry L. Hess, Jr., [hereinafter referred to as "petitioner"] filed a Petition Under 28 U.S.C. §2254 for Writ of Habeas Corpus by a Person in State Custody. On January 9, 2006, the petitioner paid the filing fee. On January 23, 2006, the respondent, Thomas McBride [hereinafter referred to as "Respondent"] was ordered to show cause why the writ should not be granted. On March 1, 2006, Respondent filed a Motion to Dismiss the petition as untimely. Following a Roseboro Notice and a Reply by petitioner, the undersigned issued a Report and Recommendation in which he recommended that the motion to dismiss be denied and that Respondent be required to file an answer addressing the specific contentions raised by petitioner in his § 2254 petition. No objections were filed, and on November 13, 2006, the District Court adopted the Report and Recommendation and ordered Respondent to file an answer addressing the specific contentions raised by petitioner. On March 20, 2007, Respondent filed a Motion to Dismiss for failure to state a claim and a Motion for Summary Judgment. In addition, he filed a memorandum in support of those motions. On March

21, 2007, a Roseboro Notice was issued, and on April 10, 2007, petitioner filed a response and a Memorandum in Support of Diminished Capacity.

This matter is pending before me for additional review and report and recommendation pursuant to Court's order dated November 13, 2006.

# I. Procedural History

## A. PROCEEDINGS IN STATE COURT

### 1. The Berkeley County Conviction

On May 16, 2000, a Berkeley County, West Virginia, Grand Jury indicted petitioner on one count of murder. After a three-day trial, petitioner was found guilt of first degree murder, and the jury did not recommend mercy. On March 19, 2001, petitioner was sentenced to life imprisonment without the possibility of parole.

### 2. Direct Appeal

On October 10, 2001, petitioner, by counsel, filed a direct appeal of his conviction and sentence to the West Virginia Supreme Court of Appeals [hereinafter referred to as WVSCA]. In the appeal, petitioner asserted the following errors at trial:

1. The trial court erred when it allowed into evidence the photographs of the State medical Examiner depicting the victim's body immediately prior to the autopsy as the probative value of the photographs was greatly outweighed by their unfair prejudicial effect pursuant to Rule 403 of the West Virginia Rules of Evidence.

2. The trial court erred when it allowed into evidence the photograph of the victim lying in the orchard as the probative value of the photograph was greatly outweighed by its unfair prejudicial effect pursuant to Rule 403 of the West Virginia Rules of Evidence.

3. The trial court erred when it refused to permit Dr. Bernard Lewis to testify as to his opinion that Hess could not have formed the requisite specific intent to kill or have been able to premeditate and deliberate the killing of the victim.

4.      The trial court erred when it failed to direct a verdict in Hess' favor at the close of the State's case.

5.      The trial court erred when it denied Hess' Motion for Change of Venue.

6.      The cumulative weight of the errors required granting a new trial.

(Doc. No. 29-2, P. 21).

By order entered April 2, 2002, the West Virginia Supreme Court of Appeals denied the petition by a 3-2 margin.  (Doc. No. 29-2, pp.   9-13).  However, while Justices Starcher and Albright voted to grant the petition and have the matter fully briefed and set on the argument docket, they did so based on their belief that their Court should give full appellate review to all cases involving life imprisonment without possibility of parole.  (Id. at 9).  Accordingly, their desire to grant the petition was not based on any affirmative belief in the merits of Hess' claims of error at the trial court level.  (Id.)

### 3.  Habeas Petitions Filed in the Circuit Court of Berkeley County

On October 1, 2003, petitioner filed a *pro se* petition for post-conviction relief in the Circuit Court of Berkeley County.  In his petition, petitioner alleged the following grounds for relief:

1.      Due to prior knowledge of my family, indeed a personal altercation with a member of my immediate family, Christopher C. Wilkes, the trial judge, should have voluntarily recused himself in my case. I brought this issue to the attention of my defense attorney, Bryon Craig Manford, before trial, however, Mr. Manford failed to inform the members of the Court or to act on this information in any way.

2.      Two of the persons chosen to hear this case should not have been allowed to sit on the jury because of their intimate relationship with members of my family and would cause my case to be prejudiced.  The first juror, Angela Snyder, informed the Court during jury selection that she was married to one of  my wife's relatives.  However, she did not inform the Court that

her husband was the friend of a man with whom I once had a legal conflict. The second juror, James Childs, was, at the time of the trial, and continues to be involved in a relationship with my cousin's wife's sister. My cousin, Brian McKinney, advised me during the trial James Childs discussed my case with him. Again, I advised Mr. Manford of these issues and he failed to act on the information in any way.

3.      My Doctor, Dr. Bernard Lewis, was not permitted to give his professional opinion concerning my capacity at the time of the crime for meeting the criteria for 1st degree murder. The issue was put to the Supreme Court for an opinion and the Supreme Court did not respond.

4.      The Court did not have the opportunity to hear the testimony of Dr. Justice, a State doctor, whose testimony and written report I believe would have helped my case. It was Mr. Manford's opinion that Dr. Joseph should not Testify because his testimony would rebut the testimony of Dr. Bernard Lewis. For reasons unknown to me, I was only recently allowed to review Dr. Justice's report and in so doing and talking with Dr. Justice I discovered that it was his opinion that, if convicted, I should only be convicted of 2nd degree murder.

5.      My fifth issue concerns misconduct by the prosecution. I contend that premeditation was never proven by Prosecuting Attorney, Pamela Games-Neely, who was not able to produce any hard evidence and merely "speculated" as to what transpired. As there was no premeditation and no evidence proving premeditation, the Prosecutor resorted to offering her assumptions and opinions to the Court as fact.

6.      This issue pertains to my "so-called" taped confession. Subsequent to my arrest the only document I signed was for my fingerprints and nothing else. I, therefore, did not sign a transcribed "taped' confession.

7.      The Court erred when I was indicted and tried for "1st degree murder." Under West Virginia law there is no such indictment. The "murder" indictment serves as the indictment for any degree of that crime. The degree itself depends on the proof produced at trial. A general form of indictment is good for conviction of murder in any degree. State v. Justice, 191 W. Va. 261, 445 S.E.2d 202 (1994).

8.      The Court erred in not allowing the Petitioner to utilize the defense of diminished capacity or intoxication at the time of the crime, and the Court gave no instructions as to the jury pertaining to these defenses. I am in possession of my medical records from the City Hospital dated the evening of the crime which indicate my degree of intoxication and would have been

4

able to disprove premeditation had I been allowed to use the above-named defenses.

9.     The Court erred by its failure to instruct the jury on the different degrees of homicide and denial of acquittal. I was tried on a "degree" of murder – not on the question of whether or not I actually did commit the murder. My attorney, Mr. Manford, stood before the jury and stated "he did it, we all know he did it. We just have to find out what degree he did it in." (From trial transcript). This was shocking to me as I believed I was pleading "not guilty" to the charge of murder in any degree. In fact, when the Judge asked me how I pled, I responded to the Court with "not guilty."

10.    The tenth and final issue I will address is the issue of confidentiality. My attorney, Mr. Manford, employs a paralegal, Glen DeHaven, who discussed my case on a regular basis with another client of Mr. Manford's Roger Linaburg. Mr Linaburg is willing to testify as to what was discussed between them.

(Doc. No. 9-4, pp. 1-4.).

On July 2, 2003, the Circuit Court of Berkeley County entered an order dismissing the petition without prejudice. In entering the order, the circuit court found that "the pleading does not conform to the requirements of the West Virginia Rules governing post conviction habeas corpus and is not endorsed by counsel." (Doc. No. 9-5).

Thereafter, on October 16, 2003, petitioner's counsel, Robert E. Barrat, filed a petition for habeas relief in the Circuit Court of Berkeley County that was identical to that previously filed by the petitioner. On or about June 8, 2004, the petitioner filed a <u>Losh</u> list, along with a Memorandum in support of his petition. An omnibus evidentiary hearing was held on October 7, 2004, and by final order entered January 7, 2005, the court denied relief.

**4.  <u>State Habeas Appeal to the West Virginia Supreme Court of Appeals</u>**

On April 28, 2005, the petitioner, by counsel appealed the Circuit Court's order to the state supreme court, assigning the following eleven errors:

1.     It was prejudicial error for the trial judge not to have recused himself;

2.	Petitioner was prejudiced by both juror conflict and ineffective assistance of counsel;

3.	Petitioner was prejudiced by the trial court in suppression of certain psychological evaluation testimony;

4.	Petitioner was greatly prejudiced by the Prosecutor's actions and remarks and would allege prosecutorial misconduct;

5.	Petitioner was prejudiced by the admission of his confession at trial;

6.	Petitioner was prejudiced by certain indictment problems;

7.	Petitioner was prejudiced by certain jury instruction problems;

8.	Petitioner is greatly prejudiced by his sentence length;

9.	Petitioner was greatly prejudiced by shocking and gruesome victim death scene photographs;

10.	Petitioner was greatly prejudiced at trial by the refusal of a change of venue;

11.	Petitioner now asserts the cumulative error doctrine.

On November 17, 2005, the West Virginia Supreme Court of Appeals rejected the petitioner's appeal. (Doc. No. 1-3, p. 1)

**B.	Federal Habeas Petition**

Petitioner's federal habeas petition raises the following eleven grounds for relief:

1.	It was prejudicial error for the trial judge, Christopher Wilkes, not to have recused himself from the proceedings;

2.	Petitioner was prejudiced by the failure to impanel an impartial jury;

3.	Petitioner was prejudiced by the trial court in suppression of certain psychological evaluation testimony;

4.	Petitioner was greatly prejudiced by the prosecutor's actions and remarks, and would allege prosecutorial misconduct;

5.	Petitioner was prejudiced by the admission of his confession at trial;

6.      Petitioner was prejudiced by certain indictment problems;

7.      Petitioner was prejudiced by certain jury instruction problems;

8.      Petitioner was prejudiced by the length of his sentence;

9.      Petitioner was greatly prejudiced by shocking and gruesome victim crime scene photographs;

10.     Petitioner was greatly prejudiced at trial by the refusal of a change of venue;

11.     Petitioner now asserts the cumulative error doctrine.

## II. <u>Standard of Review</u>

### A. <u>Motion to Dismiss</u>

In ruling on a motion to dismiss the Court must accept as true all well-pleaded factual allegations. <u>Walker v. True</u>, 399 F.3d 315 (4th Cir. 2005). Furthermore, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear, as a matter of law, that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. <u>Hishon v. King & Spaulding</u>, 467 U.S. 69, 73 (1984); <u>Conley v. Gibson</u>, 355 U.S. 41, 4506 (1957).

### B. <u>Summary Judgment</u>

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. <u>See</u> <u>Blackledge v. Allison</u>, 431 U.S. 63, 80 91977). So too, has the Fourth Circuit Court of Appeals. <u>Maynard v. Dixon</u>, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party.  Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990).  However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986).  To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]."  Id.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987).  Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation.  Anderson, 477 U.S. at 248.  It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion.  Matsushita Elec. Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 587-88 1986).

**C.  Federal Habeas Review Under 28 U.S.C. § 2254**

Notwithstanding the standards which govern the granting of a motion for summary judgment, the provisions of 28 U.S.C. § 2254 must be examined to determine whether habeas relief is proper.  Title 28 U.S.C. § 2254 requires a district court to entertain a petition for habeas corpus relief from a prisoner in State custody, but "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  "Federal habeas relief does not lie for errors of state law."  Thomas v. Taylor, 170 F.3d 466, 470 (4th Cir. 1999); see, also, Weeks v. Angelone, 176 F.3d 249, 262 (4th Cir. 1999).  Regardless,

"[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State Court shall not be granted unless it appears that...the applicant has exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A).

Exhaustion requires a federal habeas petitioner present all federal claims - *in federal terms* - to the state court prior to presenting them for federal habeas review.  Picard v. Connor, 404 U.S. 270, 275 (1971) (citations omitted).  This requirement ensures the State is given the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  Id.  To exhaust a claim in state court, the petitioner must "expressly raise[] that same federal constitutional claim in state court that he raises in federal court."  Diaz v. Weisner, 2006 U.S. Dist. LEXIS 56583, at 31 (W.D.N.C.  Aug. 1, 2006).  "It is not enough that all the facts necessary to support the federal claim were before the state court or that a somewhat similar state-claim was made."  Anderson v. Harless, 459 U.S. 4, 6 (1982) (citations omitted).

Even if a petitioner is found to have exhausted his state remedies, the federal court may not grant habeas relief unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d)(1) and (2); see also Williams v. Taylor, 529 U.S. 362 (2000).

The Fourth Circuit Court of Appeals has determined that "the phrase 'adjudication on the merits' in section 2254(d) excludes only claims that were not raised in state court, and not claims that were decided in state court, albeit in a summary fashion."  Thomas v. Taylor, 170 F.3d 466, 475 (4th Cir. 1999).  When a state court summarily rejects a claim and does not set forth its reasoning, the federal court independently reviews the record and clearly established Supreme

Court law.  Bell v. Jarvis, 236 F.3d 149 (4th Cir.), cert. denied, 524 U.S. 830 (2001)(quoting Bacon v. Lee, 225 F.3d 470, 478 (4th Cir. 2000)).  However, the court must still "confine [its] review to whether the court's determination 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Id. at 158.

A federal habeas court may grant relief under the "contrary to" clause if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413.  A federal Court may grant a habeas writ under the "unreasonable application" clause, "if the state court identifies the correct governing legal principle from the Court's decision but unreasonably applies that principle to the facts of the prisoner's case."  Id. "An unreasonable application of federal law is different from an incorrect application of federal law.  Id. at 410.

When a petitioner challenges the factual determination made by a state court, "federal habeas relief is available only if the state court's decision to deny post-conviction relief was 'based on an unreasonable determination of the facts.'" 28 U.S.C. § 2254(d)(2).  In reviewing a state court's ruling on post-conviction relief, we are mindful that 'a determination on a factual issue made by a State court shall be presumed correct,' and the burden is on the petitioner to rebut this presumption 'by clear and convincing evidence.'" Tucker v. Ozmint, 350 F.3d 433, 439 (4th Cir. 2003).

However, habeas corpus relief is not warranted unless the constitutional trial error had a "substantial and injurious effect or influence in determining the jury's verdict."  Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); Richmond v. Polk, 375 F.3d 309 (4th Cir. 2004).  "Under

this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" Brecht, supra.

### III.  Analysis

**A.      Ground One - Alleged Judicial Bias**

Most questions concerning a judge's qualifications to hear a case are not constitutional ones, because the Due Process Clause of the Fourteenth Amendment establishes a constitutional floor, not a uniform standard.  Aetna Life Ins. Co. V. Lavoie, 475 U.S. 813, 828 (1986).  Rather, questions concerning a judge's qualifications are usually answered by common law, statute, or the professional standards of the bench and bar.  See, e.g., Aetna, id., at 820-21;  Tumey v. Ohio, 273 U.S. 510, 523; 28 U.S.C. §§ 144, 455; ABA Code of Judicial Conduct, Canon 3C(1)(a) (1980). However, the threshold established by the Due Process Clause clearly requires a "fair trial in a fair tribunal," Withrow v. Larkin, 421 U.S. 35, 46 (1975), before a judge with no actual bias against the defendant or interest in the outcome of the particular case.  See, e.g., Aetna, supra, at 821-22; Tunmey, supra, at 523.

In this particular case, the petitioner alleges that the trial judge should have recused himself due to bad blood between their families.  At the omnibus hearing, the petitioner testified that he told his attorney's paralegal that there was a family conflict.  He further testified that his own father knew more about it.  However, when pressed, the petitioner testified that "[i]t had something to do with my uncle and some land. [The judge's] brother beat my uncle up with the barrel of a shotgun because he wouldn't get off of the land." (Doc. No. 19-4, p. 22).  At the same hearing, petitioner's trial counsel testified that he had been given no specific allegations regarding any conflict between the petitioner's and judge's families.  Rather, it was a "family, a Hatfield and

McCoy type of thing. I obviously didn't think it was important at the time. I apologize but it didn't seem to me to be a direct conflict of any kind." (Doc. No. 19-5, p. 18).

Clearly, the petitioner had no first hand knowledge of the alleged incident and called no witness who did. Furthermore, the petitioner presented no evidence that if the incident did, in fact occur, that Judge Wilkes even knew about it. Moreover, the petitioner has made no showing of any actual bias on the part of Judge Wilkes. Therefore, even if this Court were to accept that the petitioner has demonstrated the appearance of bias, the United States Supreme Court's case law has never held that the mere appearance of bias on the part of a state trial judge, without more, violates the Due Process Clause. Accordingly, the petitioner's allegation that Judge Wilkes committed prejudicial error by failing to recuse himself is without merit.

**B.**     <u>**Ground Two - Alleged Juror Bias**</u>

The petitioner alleges that he was prejudiced by the failure to impanel an impartial jury. More specifically, the petitioner alleges that two of the persons chosen to be on the jury should not have been allowed to sit on the jury because of their relationship with members of his family. The petitioner contends that the husband of one juror, Angela Snyder, was the friend of a man with whom he had once had a legal conflict. The petitioner contends the second juror, James Childs, was, at the time of the trial, and continues to be involved in a relationship with his cousin's wife's sister. In addition, the petitioner contends that James Childs discussed the trial with his cousin, Brian McKinney.[1]

Although not clearly articulated, the substance of the petitioner's claim is juror deceit. A review of the trial transcript establishes that on *voir dire*, the prospective jurors were asked

---

[1]At his state habeas hearing, the petitioner testified that he did not find out about these potential conflicts until after the trial. (Doc. No. 19-4, p. 49).

whether any of them were related or social acquaintances of the petitioner. Neither Ms. Snyder nor Mr. Childs responded in the affirmative. However, the following day, Ms. Snyder reported to the Court that she had learned that her husband was a distant cousin of the petitioner. Upon questioning by both the prosecuting attorney and defense counsel, Ms. Snyder indicated that this knowledge would not affect her ability to deliberate upon the facts and would not make her feel uncomfortable. (Doc. No. 22, p. 4-5).

The substance of the petitioner's claim is juror deceit. Clearly, the right to an impartial jury is fundamental to the concept of due process. Smith v. Phillips, 455 U.S. 209 (1982). In refusing to grant the petitioner relief on his allegation of juror misconduct, the state habeas court found that the petitioner's burden was to prove "by clear and convincing evidence that the misconduct has prejudiced the defendant to the extent that the defendant has not received a fair trial." (Doc. No. 1-3, p. 24). The state habeas court then found that the petitioner never raised a juror misconduct allegation at trial or on appeal. In addition, the habeas court found that the record did not support his allegation. As correctly noted by the habeas court, the two jurors in question were primarily silent during *voir dire*, and there is no reversible error when a juror, like Ms. Snyder, seeks to clarify for the court an otherwise truthful answer to a *voir dire* question. As well, the habeas court committed no error when it found that the petitioner's allegations, with no supporting evidence, that Ms. Snyder's husband was a friend of a man with whom the petitioner once had a fight or that Mr. Childs was involved in a relationship with the petitioner's cousin's wife's sister or that Mr. Childs discussed the case with the petitioner's cousin is not clear and convincing evidence of actual prejudice. In affirming the trial court's ruling, the WVSCA applied the standard first set forth by the United States Supreme Court in McDonough Power Equipment, Inc. V. Greenwood, 464 U.S. 548, 556 (1984). As noted by the WVSCA, in McDonough, the

United States Supreme Court established the test for determining whether a new trial is required when there is juror deceit during voir dire. This test requires that the individual requesting a new trial must first demonstrate that a juror failed to answer honestly a material question presented on *voir dire,* and second, must show that a correct response would have provided a valid basis for a challenge for cause. Noting that, "[a]ppellant's counsel did not question the juror during the hearing and did not demonstrate how a correct response by the juror would have provided a valid basis to sustain a challenge for cause or show that the juror was actually biased," the WVSCA concluded that the trial court properly employed its discretion by refusing to grant a mistrial.

Under 42 U.S.C. § 2254(e)(1), a factual determination made by a state court is presumed to be correct. Here, the petitioner has made no showing that the decision of the state court was unreasonable in light of the facts presented in the state proceeding. Moreover, the determination of the state court was not contrary to or an unreasonable application of clearly established federal law. Thus, the petitioner is not entitled to relief on this claim.

**C.        Ground Three - Suppression of Psychological Evaluation Testimony**

Petitioner alleges that his Due Process rights under the United States Constitution were violated when Dr. Lewis, a state doctor, was precluded from testifying to his opinion regarding petitioner's mental capacity to commit first degree murder. While Dr. Lewis was permitted to testify to petitioner's history of head trauma, physical and substance abuse, Dr. Lewis was not permitted to offer his opinion on petitioner's incapacity (due to intoxication and substance abuse, prior head traumas, and irregularity in his prescription medication routine) to premeditate or form the intent to kill necessary to commit first degree murder. (February 14, 2001 transcript, p. 19). Respondent alleges the Court is precluded from reviewing the state court's interpretation of state law regarding the admissibility of Dr. Lewis's expert opinion testimony. Respondent further

contends the Court may not consider petitioner's constitutional claim because petitioner did not exhaust his claim in state court. Respondent finally argues that even if the Court reviews petitioner's claim, petitioner has failed to demonstrate the trial court's restriction of Dr. Lewis' testimony violated federal or state law.

To the extent petitioner's claim challenges the trial judge's interpretation of state evidentiary law regarding the admissibility of an expert's opinion, the Court is barred from reviewing this issue. See Thomas, 170 F.3d at 470. To the extent petitioner's claim alleges the restriction of Dr. Lewis's testimony violated his constitutional right to present a defense, the Court finds petitioner failed to exhaust this claim in state court. See Picard, 404 U.S. at 275. On direct appeal, petitioner's challenge to the restriction of Dr. Lewis' testimony relied solely on state law and precedent and failed to raise a federal claim. (Doc. No. 29-2, pp. 13-14). In his state habeas petition, petitioner's claim regarding Dr. Lewis' testimony again failed to raise any federal claim. (Doc. No. 19-3, p. 3). Finally, on appeal to the Supreme Court of Appeals of West Virginia of denial his state habeas petition, petitioner's brief referenced his right to present a defense, due process, and alleged a "constitutional violation," but did not explicitly allege a violation of his Due Process rights under the Fourteenth Amendment of the United States Constitution, as he now asserts. (Doc. No. 19-6, p. 9). Such a "a fleeting reference to the federal constitution, tacked onto the end of a lengthy, purely state-law evidentiary argument, does not sufficiently alert and afford a state court the opportunity to address and alleged violation of federal rights." Wilder, 274 F.3d at 260. Additionally, the fact the state habeas court confined its analysis of Dr. Lewis' testimony to the application of state law evidences it was not sufficiently put on notice of petitioner's constitutional claim and denied a "fair opportunity" to review the claim. See Duncan, 513 U.S. at 366.

Even if the Court were to find petitioner exhausted his federal constitutional claim in state court, the Court finds petitioner is not entitled to relief under 28 U.S.C. § 2254(d)(1) because he has failed to establish the trial court's restriction on Dr. Lewis' testimony was contrary to or an unreasonable application of clearly established federal law or an unreasonable determination of fact. 28 U.S.C. § 2254(d)(1). Although it is well established a criminal defendant has a federal constitutional right to present a defense, <u>Crane v. Kentucky</u>, 476 U.S. 683, 690 (1986), "the right is not unlimited, but is subject to reasonable restrictions." <u>United States v. Scheffer</u>, 523 U.S. 303, 308 (1998). A state rule of evidence may infringe on the right so long as it is not "arbitrary or disproportionate to the purposes they are designed to serve." <u>Id.</u> (citations omitted). The exclusion of evidence is "arbitrary or disproportionate" only where it "infringe[s] upon a weighty interest of the accused." <u>Id.</u> In the present case, the state rules relied on by the trial judge to limit the scope of Dr. Lewis' testimony on the ultimate legal issue of whether petitioner possessed intent or premeditation purported to protect the province of the judge - who instructs the jury on the correct legal standards - and the jury - who apply those legal standards to the facts to render a verdict. (Doc. No. 22, pp. 18-20). The Court finds these laws were not arbitrary or disproportionate to their purpose. Furthermore, because Dr. Lewis was permitted to testify to petitioner's medical history and performance on a battery of tests, the jury was provided with the facts necessary to consider whether petitioner possessed the intent and premeditation necessary for first degree murder. Finally, while the Court recognizes the complex history surrounding the availability in West Virginia of the diminished capacity defense, the Court finds it noteworthy that the Supreme Court of Appeals of West Virginia, in expressly adopting the diminished capacity defense in 2003, failed to mention the diminished capacity defense includes the right to introduce expert opinion testimony on the ultimate issue of mental capacity to form a requisite

intent.  See State v. Joseph, 214 W. Va. 525, 531 (2003).  Rather, the court merely held, "the diminished capacity defense in West Virginia is available to permit a defendant to introduce expert testimony regarding a mental disease or defect that rendered the defendant incapable, at the time the crime was committed, of forming a mental state that is an element of the crime charged."  Id. at 532.  For these reasons, relief on the basis of this claim is denied.

**D.      Ground 4 - Alleged Prosecutorial Misconduct**

Petitioner alleges the prosecuting attorney committed reversible prosecutorial misconduct when she "speculated" in closing argument as to the facts establishing petitioner's premeditation and stated in closing argument that petitioner has "always been violent."  Respondent contends petitioner is not entitled to habeas relief on this claim because he has failed to establish the prosecutor's remarks rendered his trial fundamentally unfair.

In closing argument, the prosecutor argued the following regarding premeditation to the jury:

> "They have developed in this particular instance they're going to have sex. Something happens and he hits her. . . . She gets out of the car at that point because obviously if someone smacks you, you're going to get out of the car. . . . She's in the field attending to herself and what does she do? She takes her glasses of. . . . Mr. Hess tells you in his statement that at first he doesn't remember what happened but then he tells you on specific questions from Trooper Copson, what did you hit her with, crowbar. . . . So he gets the crowbar and he begins to beat her and he beats her beyond recognition. . . . In this instance he beat her because she had time to do this which is enough time for him to get the crowbar.  Ladies and gentlemen, that is the time period it takes to form deliberate, premeditated acts. Just that simple. . . . There is a point that there is no question that what

you have here is anger being ripped out but in its inception it was not the anger that drove

him, it was the reason that he had in his mind to kill her and it's a split second. It's when

he picked it up, when he picked up that crowbar and went afer her, that was it. That's the

premeditation." (Doc. No. 22-3, pp. 150-151, 157-58).

The prosecutor also stated during closing evidence "[l]adies and gentlemen, he's always been

violent." (Doc. No. 22-3, p. 36).

The cornerstone of petitioner's present allegation is the deprivation of his due process

right to a fair trial resulting from the prosecutor's remarks. In evaluating his claim, the Court first

notes the state habeas court concluded petitioner's claim was procedurally defaulted due to his

failure to object at trial or raise the issue on direct appeal. (Doc. No. 19-3, p. 28). Because

petitioner has failed to show cause and prejudice for the default, the Court is barred from

reviewing petitioner's claim. See Fisher v. Angelone, 163 F.3d 835, 852-53 (4th Cir. (1998); see,

also, Carpenter v. Harkleroad, 2005 U.S. Dist. LEXIS 38067, at *6 (W.D.N.C. Dec. 19, 2005)

[holding denial of claim by state court due to application of state procedural default rule bars

claim from federal habeas review, the court's comment on the merits of the claim

notwithstanding.].

Even if the Court were to review the claim, the claim is without merit. As explained by

the Supreme Court, habeas relief may be granted on the basis of improper prosecutor remarks if

the prosecutor's remarks rendered petitioner's trial fundamentally unfair. Darden v. Wainwright,

477 U.S. 168, 181 (1986). The determination of whether the prosecutor's comments rendered the

trial fundamentally unfair requires an examination of "the nature of the comments, the nature and

quantum of the evidence before the jury, the arguments of opposing counsel, the judge's charge,

and whether the errors were isolated or repeated." Lawson v. Dixon, 3 F.3d 743 (4th Cir. 1993),

cert. denied, 510 U.S. 1171 (1994). While the prosecutor may not in closing argument argue facts not in evidence, the prosecutor may make "fair inferences" from the evidence. United States v. Francisco, 35 F.3d 116, 120 (4th Cir. 1994).

In light of the above standards, the Court finds the state court's determination "the prosecutor's remarks were fully supported by the evidence" is not contrary to or an unreasonable application of federal law nor an unreasonable determination of facts.[2] (Doc. No. 1903, p. 29); see 28 U.S.C. § 2254(d). The prosecutor's comments regarding petitioner's premeditation were not improper nor did they render the trial fundamentally unfair. Rather, they were reasonable inferences based on the evidence introduced at trial. See Francisco, 35 F.3d at 120; (Doc. No. 22-3, p. 32-33; Doc. No. 19-3, p. 28-29). Regarding the prosecutor's remark concerning petitioner's history of violence, the Court again finds the remarks were not improper but rather were reasonable inferences based on the evidence. Id. Specifically, Dr. Lewis testified to petitioner's self-reported history of anger and impulse control, petitioner's past diagnosis of intermittent explosive disorder and personality disorder, and petitioner's military records documenting a history of abuse, violence, and unresolved anger. (Doc. No. 22-2, pp. 26, 27, 33, 53). Additionally, the record indicates the prosecutor's comment was made within the context of rebutting the defense petitioner's violent behavior was the result of a pre-existing organic brain disorder, as opposed to premeditation. (Doc. No. 22-3, p. 153). The prosecutor's statement was not intended to inflame the jury, nor was it repeatedly made throughout closing argument. See

_____

[2] While the state habeas court's conclusion was not supported by any explanation and thereby of a "summary" nature, the claim was nevertheless "adjudicated on the merits" for the purposes of applying the deferential standard for review set forth in 28 U.S.C. § 2254(d). See Taylor, 170 F.3d at 475 [holding the phrase "'adjudication on the merits'" in section 2254(d) excludes only those claims that were not raised in state court, and not claims that were decided in state court, albeit in a summary fashion."].

<u>United State v. Marshall</u>, 1 F.3d 235, 241 (4th Cir. 1993) (listing factors to be considered in determining whether improper comments by the prosecutor prejudiced the defendant to the point of requiring reversal).

For the above reasons, petitioner request for relief on this issue is denied.

**E.**     <u>**Ground 5 - Admission of Confession at Trial**</u>

Petitioner alleges his signed, written statement (obtained by Trooper Copson at the hospital (Doc. No. 19-14, p. 32)) and videotaped statement (obtained after taken into custody) should not have been admitted at trial because they were involuntary due to his level of intoxication and were obtained in violation of his right to counsel. Petitioner alleges his videotaped statement should have also been ruled inadmissible due to the delay in taking him before a magistrate judge. Respondent argues the trial court's admission of petitioner's admission was not contrary to or an unreasonable application of federal law.

Petitioner's claim invokes his Fifth Amendment right against self-incrimination which necessarily includes his right to be protected against involuntary or coerced statements. While petitioner exhausted this constitutional claim in state court, albeit narrowly,[3] the Court finds petitioner's claim is without merit because there is no evidence the trial court's or state habeas court's determination his statements were voluntary and therefore admissible was contrary to or

_____

[3] In his state habeas petition, petitioner's entire claim on this issue consisted of, "This issue pertains to my 'so called' taped confession. Subsequent to my arrest the only document I signed was for my fingerprints and nothing else. I, therefore, did not sign a transcribed "taped" confession." (Doc. No. 19-3, p. 3). In addition to addressing this specific contention, the state habeas court took the liberty of reviewing the trial court's determination of voluntariness and admissibility of petitioner's statements. (Doc. No. 19-3, p. 26). Due to the trial and state habeas court both addressing the issue of admissibility of the statements, the Court finds the issue "exhausted" for the purposes of federal habeas review.

an unreasonable application of federal law, nor based on an unreasonable determination of facts. Regarding petitioner's claim his intoxication rendered his statements involuntary, the Supreme Court has established an individual's statement is deemed coerced, and as a result inadmissible, "if an individual's 'will was overborne' or if his confession was not 'the product of a rational intellect and free will.'" Townsend v. Sain, 372 U.S. 293, 307 (1963). While intoxication effects an individual's free will, "the mere fact that one has consumed alcoholic beverages does not mean that he is so intoxicated as to make his confession involuntary." Boggs v. Bair, 892 F.2d 1193, 1199 (4th Cir. 1989). There must be evidence that the individual was "so intoxicated his confession was not the product of his rational intellect and free will." Id. In concluding petitioner's statements were not rendered involuntary due to his mental state at the time of their making, the trial court and state habeas court reasonably relied on testimony from Trooper Copson that established petitioner was aware of events while at the hospital, did not appear intoxicated, was able to talk clearly, was able to recall detailed facts of the murder and personal identification information. (Doc. No. 19-14, pp. 26-27, 53-56). The trial court also reasonably relied on testimony that petitioner was informed of and voluntarily waived his Miranda rights both at the hospital and once taken into custody. Id. (Doc. No. 19-14, pp. 53-56; 19-3, p. 26). For these reasons, petitioner's claim his statements were inadmissible because they were involuntary is without merit.

Regarding petitioner's claim his statements were inadmissible because obtained in violation of his right to counsel, the Supreme Court has held an individual, to properly assert his right to consult with an attorney during custodial interrogation,[4] must, "at a minimum, [make]

---

[4] This right is not a constitutional right, but rather a "prophylactic" right born out of an individual's Fifth Amendment right against self-incrimination. See Miranda v.

some statement that can reasonably be construed to be an expression of a desire for the assistance off an attorney." <u>McNeil v. Wisconsin</u>, 501 U.S. at 171, 178 (1991). An ambiguous or equivocal reference to an attorney that a "reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel," is insufficient to require all questioning cease. <u>Id</u>.; <u>see also</u> <u>Davis v. United States</u>, 512 U.S. 452, 459 (1994). Trooper Copson testified at the habeas hearing petitioner was informed of his right to counsel at the hospital (even though not detained at the time of his first statement) and never explicitly or implicitly requested an attorney. (Doc. No. 19-4, p. 33). Challenging Trooper Copson's testimony, Petitioner testified at the habeas hearing that prior to signing his first statement, he said to Trooper Copson, "maybe I should have an attorney present before I sign this." (Doc. No. 19-4, p. 20). While neither the trial court nor the state habeas court explicitly discussed petitioner's alleged invocation of counsel, the Court finds their determination petitioner's statement was voluntary and admissible is not contrary or an unreasonable application of the above established Supreme Court law.

Finally, regarding petitioner's claim his videotaped statement is inadmissible because of the delay in bringing him before a magistrate, the Court finds petitioner, having failed to raise this issue prior to trial, on direct appeal, or in his state habeas petitioner, has not exhausted this claim. Even if the Court were to review his claim, the Court finds it is without merit. While federal law does establish an other voluntary statement may be excluded if there was an unnecessary delay in arraigning the defendant, <u>see</u> <u>McNabb v. United States</u>, 318 U.S. 332

---

<u>Arizona</u>, 384 U.S. 436, 469-473 (1966)

(1943); <u>Mallory v. United States</u>, 354 U.S. 449 (1957), petitioner has offered no evidence he was unduly delayed in his arrest or his appearance before the state magistrate.

For the above reasons, petitioner is denied relief on this claim.

**F.     <u>Ground 6 - Faulty Indictment</u>**

Petitioner alleges he was prejudiced by the indictment that included language alleging first degree murder, because, petitioner alleges, the degree of murder depends on the proof presented at trial.  Respondent argues the language of the indictment was proper.

The indictment in the present case charged petitioner "did unlawfully, feloniously, willfully, and maliciously and deliberately kill and murder, one Deborah Lee Grove, in violation of Chapter 61, Article 2, Section 1, of the Code of West Virginia."  Chapter 61, Article 2, Section 1 of the Code of West Virginia states any "willful, deliberate, or premeditated killing" is murder of the first degree.  W. Va. Code § 61-2-1 (2007).

The Court finds petitioner has failed to present a cognizable claim for federal habeas review because the propriety of the indictment is a question of state law, not federal law.  <u>See</u> <u>Weeks</u>, 176 F.3d at 262 [holding matters of state law are not cognizable on federal habeas review]; <u>see</u>, <u>also</u>, <u>State v. Justice</u>, 191 W. Va. 261, 267 (1994) [holding an indictment for murder is sufficient for a conviction of first degree murder if in conformity with West Virginia Code § 61-2-1].  Even if petitioner's claim was cognizable as a question of federal law, petitioner failed to exhaust any such claim in state court because he failed to frame his claim in "federal terms" in his state habeas petition such that the state habeas court was put on notice of his constitutional claim.  <u>Picard</u>, 404 U.S. at 275.  Accordingly, review by this Court is barred.  Furthermore, absent a showing of cause and prejudice, the Court may not review any claim a state declines to consider on the merits on the basis of an independent and adequate state procedural rule (such as

procedural default).  See Fisher v. Angelone, 163 F.3d 835, 852-53 (4th Cir. (1998).  While the state habeas court did discuss the merits of petitioner's present claim, it did so only after concluding petitioner had procedurally defaulted on the issue due to his failure to raise the issue on direct appeal.  (Doc. No. 19-3, p. 28).  Accordingly, federal habeas review is barred.  See Carpenter v. Harkleroad, 2005 U.S. Dist. LEXIS 38067, at *6 (W.D.N.C. Dec. 19, 2005) [holding denial of claim by state court due to application of state procedural default rule bars claim from federal habeas review, the court's comment on the merits of the claim notwithstanding.].

**G.      Ground 7 - Faulty Jury Instructions**

Petitioner alleges his Sixth and Fourteenth Amendment rights were violated by the trial court's refusal to instruct the jury on the defense of diminished capacity or intoxication and the trial court's failure to instruct the jury on voluntary and involuntary manslaughter as lesser offenses to murder.  Respondent contends the trial court did instruct on diminished capacity.  Respondent also argues petitioner failed to demonstrate extraordinary circumstances justifying reversal of the trial court's failure to instruct on voluntary and involuntary manslaughter.

Regarding petitioner's claim the trial court failed to instruct on the defense of diminished capacity or intoxication, the Court finds while petitioner did exhaust this constitutional claim in state court, his claim is without merit.  The trial record clearly establishes the trial judge instructed the jury that mental illness, voluntary intoxication, or any combination thereof may render a person incapable of forming the mental state (either premeditation or malice) necessary for murder (first or second degree).  (Doc. No. 22-3, p. 24).  Accordingly, the portion of petitioner's claim pertaining to diminished capacity defense is without merit.

Regarding petitioner's claim the trial court failed to instruct the jury on the lesser offenses of voluntary and involuntary manslaughter, the Court finds petitioner's claim does not warrant

relief.  As held by the Supreme Court, "due process requires that a lesser included offense instruction be given only when the evidence warrants such an instruction."  Hooper v. Evans, 456 U.S. 605, 611 (1982).  "The decision of whether there is enough evidence to justify a lesser included offense charge rests within the sound discretion of the trial judge."  United States v. Chapman, 615 F.2d 1294 (10th Cir. 1980).  The circumstances necessary for a federal court to grant relief based on a court's refusal to instruct on a lesser offense would have to be "extraordinary."  Bates v. Lee, 308 F.3d 411, 418 (4th Cir. 2002).  While it appears from the Court's reading of the record the trial court did, in fact, instruct the jury on the lesser offense of voluntary manslaughter, (Doc. No. 22-3, p. 18-25), any refusal on the judge's part to instruct the jury on voluntary or involuntary manslaughter would have been consistent with federal law in light of the limited evidence suggesting petitioner's intoxication or brain disorder rendered him unable to form malice or premeditation.

For these reason, petitioner's claim does not warrant relief.

**H.    Ground 8 - Length of Sentence**

Petitioner alleges his sentence of life imprisonment without the possibility of parole violates the proportionality principal inherent in the Eighth Amendment because it was "too harsh and disproportionate" considering the circumstances of the crime.  Respondent argues the sentence imposed by the jury was reasonable in light of the evidence petitioner "brutally murdered a defenseless victim."

 Pursuant to West Virginia Code § 62-3-15, a person indicted for murder and found to be guilty of first degree murder shall be punished by imprisonment without the possibility of parole, unless the jury, in their discretion, recommends mercy in which case such person will be eligible

for parole. The jury in the present case found petitioner guilty of murder in the first degree and recommended imprisonment without the possibility of parole.

The Court finds petitioner failed to exhaust his constitutional claim in state court, having failed to raise the claim on direct appeal or in his state habeas petition. See Picard, 404 U.S. at 275. Accordingly, relief is denied on this issue. However, even if petitioner were found to have exhausted his constitutional claim in state court, the Court finds his claim is without merit. Relying heavily on the Supreme Court's caution that federal courts should be "reluctant to review legislatively mandated terms of imprisonment," see Rummel v. Estelle, 445 U.S. 263 (1980), and considering the facts surrounding the murder, the Court does not find petitioner's sentence disproportionate to the crime. Additionally, "[j]ury sentencing, based on each jury's assessment of the evidence it hears and appraisal of the demeanor and character of the accused, is a legitimate practice," Chaffin v. Stynchcombe, 412 U.S. 17, 32 (1973), such that "there exists no constitutional impediment to jury participation in the sentencing process." Billotti v. Legursky, 975 F.2d 113, 117 (4th Cir. 1992). Whether the jury is properly instructed on and properly exercises their discretionary role is more a question of state law than federal law.[5] Id.

For the above reasons, relief on the basis of the present claim is denied.

## I. Ground 9 - Photographs of Victim

Petitioner alleges he was prejudiced by the trial court's admission of "gruesome" photos of the victim. Petitioner argues he should receive a new trial as a result of the court's error.

---

[5] The Supreme Court of Appeals of West Virginia holds the trial judge must instruct the jury it may add a recommendation of mercy to a verdict of guilty of murder in the first degree. State v. Kopa, 311 S.E.2d 412, 422 (W. Va. 1983). The trial judge in the present case properly instructed the jury on their discretionary duty. (Doc. No. 22-3, p. 19).

Respondent contends the trial court properly admitted the photos as probative evidence of the pathologist's testimony that Petitioner use a tire iron to kill the victim.

Prior to trial, petitioner objected to the admission of detailed photos of the deceased victim, alleging their prejudicial value outweighed their probative value. (Doc. No. 19-14, p. 10-18). The trial court admitted the photos, finding the photos - although prejudicial - would aid the jury in determining the manner of death. (Doc. No. 19-14, p. 18). Petitioner raised the issue again in his state habeas petition and the state habeas court upheld the trial court's decision.

To the extent petitioner's claim requires review of the trial court's admission of the photos in light of state evidentiary law, such review is barred on federal habeas review. Thomas, 170 F.3d at 470; see, also, Lisenba v. California, 314 U.S. 219, 228 (1941) [holding a federal court "does not sit to review state court action on questions of the propriety of the trial judge's action in the admission of evidence;" the court sits to review whether the trial judge's evidentiary ruling "so infused the trial with unfairness as to deny due process of law."]. To the extent petitioner's claim involves review of the trial court's compliance with constitutional due process guarantees, the Court finds petitioner failed to exhaust his constitutional claim in state court because he failed to explicitly state, *in federal terms*, the constitutional basis for his claim such that the state court could review it. See Picard, 404 U.S. at 275; see, also, Diaz, 2006 U.S. Dist. LEXIS 56583, at 31 (W.D.N.C. Aug. 1, 2006). Even if the Court were to find petitioner exhausted his constitutional claim in state court, there is no evidence the admission of the photographs violated petitioner's due process rights. Although prejudicial due to their "gruesome" nature, the photos provided highly probative evidence of the weapon (a tire iron) and method used in killing the victim. See Roller v. McKellar, 711 F. Supp. 272, 278 (D.S.C. Apr. 19, 1989) [holding the admission of gruesome photos of the victim did not violate the defendant's due process rights because "the

photos played an important role in the state's proof of its version of the facts and were not introduced merely to inflame the jury."].

For the above reasons, relief on the basis of the present claim is denied.

**J.      Ground 10 - Denial of Motion for Change of Venue**

Petitioner alleges he was prejudiced by the trial court's denial of his motion for a change of venue because the petit jury was drawn from "the same area that received so much media coverage of the trial."  Petitioner alleges he is entitled to a new trial as a result of such prejudice. Respondent argues the trial court's factual determination regarding the impartiality of jurors is presumed to be correct and that petitioner has failed to show he was prejudiced by the impaneled jurors.

To the extent petitioner challenges the trial judge's application of state law in denying petitioner's motion, the Court is barred from reviewing petitioner's claim.  See Thomas, 170 F.3d at 470.  To the extent petitioner's claim alleges a violation of his Sixth Amendment right to an impartial jury[6] or his Fourteenth Amendment right to due process, the Court finds petitioner failed to sufficiently allege these constitutional claims in state court such that they were "exhausted."  See Picard, 404 U.S. at 275.  While petitioner did raise the issue of change of venue in his direct appeal and appeal of his state habeas petition, he failed to allege a specific violation of any federal constitutional right.  The fact the state habeas court took it upon itself, after finding petitioner failed to state a constitutional claim, to undertake a due process analysis does not

_____

[6] Although petitioner's claim focused on the denial of his motion for a change of venue, there is no recognized constitutional right to a change of venue.  Rather, there is a right an impartial jury. See Smith v. Phillips, 455 U.S. 209, 217 (1982); see United States v. Snow, 537 F.2d 1166, 1169 (4th Cir. 1976).

change the fact petitioner failed to allege the claim, *in federal terms*, in state court.  See Anderson, 459 U.S. at 6; (Doc. No. 19-6, p. 18; Doc. No. 29-2, p. 37).

Even if the Court were to find petitioner exhausted his constitutional claim in state court, there is no evidence the denial of his motion for change of venue was contrary to or an unreasonable application of federal law nor an unreasonable determination of the facts.  See 28 U.S.C. § 2254(d).  As explained by the Fourth Circuit, a defendant's right to an impartial jury requires a change of venue where voir dire reveals an impartial jury cannot be impaneled.  United States v. Bakker, 925 F.2d 728, 732 (4th Cir. 1991).  "Sheer volume of publicity alone does not deny a defendant a fair trial."  Id.  In the present case, jurors who expressed bias resulting from media coverage were excused such that the sworn jurors were free from such prejudice or bias. (Doc. No. 19-10, pp. 25-26, 31-32, 47-48, 52-57, 65-67).  Based on the results of the voir dire, the judge's denial of petitioner's motion for change of venue does not warrant relief.

**K.**     **Ground 11 - Cumulative Error**

Petitioner alleges cumulative error deprived him of "due process."  Petitioner relies on the West Virginia Supreme Court of Appeals' holding in State v. Smith, 156 W. Va. 385, 391 (1972) wherein the court stated, "The cumulative effect of the numerous errors committed during the trial of this case denied the defendant a fair trial as required by the West Virginia and Federal Constitutions and laws of the this State."  Respondent contends cumulative error is not a cognizable claim in federal habeas review and that if this court does recognize such a claim, petitioner has failed to prove there was error or that the errors were prejudicial.

The Court finds petitioner's claim does not warrant relief.  First and foremost, habeas relief may not be granted on the basis of alleged cumulative error, alone.  Rather, relief may be granted on the basis of each individual claim of error.  See Fisher, 163 F.3d at 852-53 (4th Cir.

1998) [holding claims of trial error must be reviewed individually, not collectively]. The Court has reviewed each of petitioner's claims of error and reiterates its findings that relief is not warranted on any of his claims.

## IV. <u>Recommendation</u>

For the foregoing reasons, it is hereby RECOMMENDED Respondent's Motion to Dismiss (Doc. No. 18) and Respondent's Motion for Summary Judgment (Doc. No. 19) be **GRANTED** and petitioner's Petition for Writ of Habeas Corpus (Doc No. 1) be **DENIED** with prejudice and dismissed from the docket.

Within ten (10) days after being served with a copy of this Recommendation, any party may filed with the Clerk of the Court written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable John P. Bailey, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgement of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), <u>cert</u>. <u>denied</u>, 467 U.S. 1208 (1984);

The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiff and counsel of record, as applicable.

Dated: December 26, 2007

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE